ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:     *zalinder@sideman.com*
ERICA BRAND PORTNOY (State Bar No. 244923)
E-Mail:     *eportnoy@sideman.com*
ANNA P. CHANG (State Bar No. 301468)
E-Mail:     *achang@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:     (415) 392-1960
Facsimile:     (415) 392-0827

Attorneys for Plaintiff
LULULEMON ATHLETICA CANADA INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LULULEMON ATHLETICA CANADA INC., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROSS STORES, INC. dba DD'S DISCOUNTS, a Delaware corporation; and, IOPA, INC. dba IMPULSE OFF PRICE APPAREL, a California corporation,<br><br>Defendants. | Case No.   3:19-cv-03581<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT;**<br>**2. FEDERAL TRADEMARK COUNTERFEITING;**<br>**3. FEDERAL UNFAIR COMPETITION; AND,**<br>**4. CALIFORNIA UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff lululemon athletica canada inc. ("lululemon") hereby complains and alleges against Defendants Ross Stores, Inc., doing business as dd's DISCOUNTS ("Ross Stores"), and IOPA, Inc. doing business as Impulse Off Price Apparel ("IOPA" and together with Ross Stores, "Defendants") as follows:

## INTRODUCTION

1.     Defendants are engaged in the unlawful importation and resale of significant quantities of counterfeit "lululemon" branded products at wholesale or significantly discounted prices through retail stores and wholesalers around the United States.  These counterfeit sales have

1. resulted in consumer confusion and significantly harmed lululemon and the consumer goodwill associated with the lululemon brand.

2. lululemon is a leading designer and retailer of high-quality, yoga-inspired athletic apparel. For many years, lululemon has developed, manufactured, and sold its premium apparel, including shirts, shorts, pants, and leggings, bearing lululemon's distinctive trademarks. lululemon has invested substantial effort and resources to promote its marks and, as a result, consumers recognize and rely upon lululemon's marks as signifiers of lululemon's high-quality products.

3. lululemon brings this Action to put a stop to Defendants' unlawful and infringing conduct and to recover fully for the monetary damages and significant harm to lululemon's brand and reputation caused by Defendants.

## PARTIES

4. Plaintiff lululemon is a Canadian corporation with a principal place of business in Vancouver, British Columbia, Canada. lululemon's athletic apparel products are available throughout the United States online and through retail stores, including through multiple stores in this District.

5. Upon information and belief, Defendant Ross Stores is a Delaware corporation with a principal place of business in Dublin, California. Ross Stores operates discount stores— including stores under the name dd's DISCOUNTS—in this District, claiming to offer bargain prices for name-brand products.

6. Upon information and belief, Defendant IOPA is a California corporation with a principal place of business in Los Angeles, California. lululemon is informed and believes, and on that basis alleges, that IOPA supplies Ross Stores with athletic apparel, including apparel that Ross Stores sold in this District.

## JURISDICTION AND VENUE

7. This Action arises under the Lanham Act, 28 U.S.C. §§ 1051 *et seq*, and this Court has subject matter jurisdiction over this Action under 28 U.S.C. §§ 1331 and 1338.

8.	This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367 because these claims are so related to lululemon's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.	This Court has personal jurisdiction over Ross Stores because it resides in this District and because it has engaged in business activities in this District, directed business activities at this District, and committed acts with the knowledge that the effects of those acts would be felt by lululemon in this District.

10.	This Court has personal jurisdiction over IOPA because it has engaged in business activities in this District, directed business activities at this District, and committed acts with the knowledge that the effects of those acts would be felt by lululemon in this District.

11.	Venue is proper under 28 U.S.C. § 1391(b)(1) because Ross Stores resides in this District and both Ross Stores and IOPA reside in California, the state in which this District is located.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to lululemon's claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

12.	This is an intellectual property action and therefore is properly assignable on a district-wide basis per N.D. Cal. Civil Local Rule 3-2(c).

**FACTUAL ALLEGATIONS**

**lululemon's Business and Marks**

13.	lululemon is a yoga-inspired athletic apparel company that was founded in Vancouver, British Columbia, Canada in 1998, and which expanded into the U.S. market in or around 2001.  lululemon sells many high-quality products, including clothing and athletic apparel, as well as other products such as yoga mats, bags, and accessories.  lululemon products are designed to offer performance, fit, and comfort while incorporating both function and style, which allows lululemon to address the needs of athletes and of consumers who desire everyday casual wear that is consistent with their active lifestyles.  In the United States and around the world, the lululemon brand has come to symbolize premium athletic apparel with innovative designs.

14. Authentic lululemon products are sold exclusively through lululemon's retail stores, the lululemon website (www.lululemon.com), lululemon's outlet stores, and through strategic partners such as premium yoga studios, gyms, and wellness centers. In the athletic apparel industry, it is well known that lululemon does not sell its products to or through discount apparel stores.

15. lululemon's trademarks are critical to its business. lululemon is the owner of, and has widely promoted, several trademarks which have earned substantial fame and considerable goodwill among the public. lululemon has used its trademarks (collectively, the "lululemon Marks") on and in association with its entire line of athletic apparel and accessories, as well as in connection with packaging, retail store services, and online e-commerce. lululemon products always include at least one of the lululemon Marks.

16. lululemon has caused several trademarks to be registered on the Principal Register of the U.S. Patent and Trademark Office in connection with a range of athletic apparel and accessories, and lululemon owns all rights, title, and interest in numerous federal trademark registrations, including at least:

| U.S. Reg. No. | Mark | Reg. Date | Relevant Goods |
|---|---|---|---|
| 4391115 | LULULEMON | 8/27/2013 | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas; clothing accessories, namely, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves; sandals |

| U.S. Reg. No. | Mark | Reg. Date | Relevant Goods |
|---|---|---|---|
| 4367598 | lululemon athletica | 7/16/2013 | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas; clothing accessories, namely, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves; sandals |
| 2607811 | lululemon athletica | 8/13/2002 | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats |
| 2460180 | [logo] | 6/12/2001 | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats |
| 4345516 | [logo] | 6/4/2013 | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves |
| 5393854 | (the "Upside-Down U Seam") | 2/6/2018 | Clothing, namely, tights, pants, leggings |

1  17. The above registrations are valid, subsisting, and in full force and effect.
2  Furthermore, Registration Nos. 2607811, 2460180, 4214049, and 4391115 are incontestable
3  pursuant to 15 U.S.C. § 1065.

4  18. The lululemon Marks have been used exclusively and continuously by lululemon
5  and its subsidiaries, some since at least as early as 1998, and have never been abandoned.

6  19. lululemon has also expended significant resources and effort to develop and
7  promote public recognition of the lululemon trade name and the family of lululemon-related marks
8  throughout the world. As a result of lululemon's extensive promotional efforts and its continuous
9  use of its core lululemon Marks for more than 20 years, lululemon has attained one of the highest
10 levels of brand recognition. As a result of lululemon's longstanding and widespread use and
11 promotion of the lululemon Marks, lululemon's customers worldwide have come to rely upon
12 lululemon Marks to identify lululemon's high-quality goods and services.

### Defendants' Sale of Counterfeit lululemon Products

20. Defendants imported, advertised, distributed, and sold at least thousands of counterfeit lululemon products to consumers and retailers. This unlawful conduct was either knowing and intentional, or was undertaken with willful blindness to the counterfeit nature of these products.

21. ***Importation of Counterfeit "lululemon" Products.*** Upon information and belief, at some point prior to March 2019, Defendant IOPA imported thousands of athletic leggings bearing counterfeit reproductions and spurious designations identical to or substantially indistinguishable from the lululemon Marks, including the "lululemon" word mark (U.S. Reg. No. 2607811), the lululemon wave design mark (U.S. Reg. No. 2460180), and the Upside-Down U Seam mark (U.S. Reg. No. 5393854).

22. ***Sale of Counterfeit "lululemon" Products to Consumers Through dd's DISCOUNTS Stores.*** Ross Stores operates discount stores—including stores under the name dd's DISCOUNTS—that claim to offer bargain prices for name-brand products. A number of dd's DISCOUNTS stores distributed and sold counterfeit lululemon-branded leggings (the "Counterfeit Products"), which prominently feature lululemon Marks on the product tags, including the

"lululemon" word mark (U.S. Reg. No. 2607811), the lululemon wave design mark (U.S. Reg. No. 2460180), as shown in the examples below:

  

Moreover, the tags replicate the design of authentic lululemon tags and state that the Counterfeit Products were "Designed in Vancouver," where lululemon is headquartered. The Counterfeit Products also feature lululemon's registered Upside-Down U Seam (U.S. Reg. No. 5393854), or confusingly similar versions of the Upside-Down U Seam, in its product design, and resemble lululemon's All The Right Places Pant and Fast and Free Tight.

23. In March 2019, lululemon purchased 20 Counterfeit Products from dd's DISCOUNTS stores in San Leandro, California and Hawthorne, California for $7.99 each. Genuine versions of the lululemon All The Right Places Pant and Fast and Free Tight sell for $128 each. lululemon analyzed the Counterfeit Products and determined that they were among the lowest-quality counterfeit leggings that lululemon had ever encountered. Most noticeably, whereas lululemon's All The Right Places Pant II and Fast & Free Tights are made with lululemon's smooth, four-way stretch Full-On Luxtreme fabric and lululemon's Nulux quick-drying, sweat-wicking fabric, respectively, the Counterfeit Products were made of thin, cheap polyester blends and were not constructed with the high-quality details found in genuine lululemon products.

24.     Ross Stores purchased thousands of these Counterfeit Products from IOPA. Upon information and belief, Ross Stores and its buyers were aware of and had knowledge of the lululemon brand, the design and quality of lululemon products, and the lululemon Marks. Nevertheless, Ross Stores purchased and resold the Counterfeit Products at prices so far below lululemon's retail prices that it either knew or was willfully blind to the fact that the products were counterfeit. Specifically, while lululemon's All The Right Places Pant II and Fast & Free Tight sell for $128 each, Ross Stores sold the Counterfeit Products to consumers for $7.99 each, and of course, had to receive an even lower price from IOPA. Ross Stores also either knew or was willfully blind to the fact that the products were counterfeit, due to the obvious difference in quality between the Counterfeit Products and authentic, premium lululemon products. Ross Stores also knew or was willfully blind to the fact that the products were counterfeit because it is well known that lululemon products are sold exclusively through lululemon's retail stores, the lululemon website, lululemon's outlet stores, and through strategic partners such as premium yoga studios, gyms, and wellness centers.

25.     Similarly, upon information and belief, IOPA and its buyers were aware of and had knowledge of the lululemon brand, the design and quality of lululemon products, and the lululemon Marks. Nevertheless, IOPA purchased and sold the Counterfeit Products at prices so far below lululemon's retail prices that it knew or was willfully blind to the fact that the products were counterfeit. IOPA also knew or was willfully blind to the fact that the products were counterfeit due to the difference in quality between the Counterfeit Products and authentic, premium lululemon products. IOPA also knew or was willfully blind to the fact that the products were counterfeit because it is well known that lululemon products are sold exclusively through lululemon's retail stores, the lululemon website, lululemon's outlet stores, and through strategic partners such as premium yoga studios, gyms, and wellness centers.

**Consumer Confusion Caused by Defendants' Sale of the Counterfeit Products**

26.     The Counterfeit Products sold by Defendants are of a quality substantially and materially inferior to that of lululemon's genuine goods. As alleged in more detail above, Defendants are actively using, promoting, and otherwise advertising, distributing, selling and/or

offering for sale substantial quantities of counterfeit "lululemon" branded goods with the intent that such goods will be mistaken for the genuine high quality goods offered for sale by lululemon, despite Defendants' knowledge that it does not have authority to use the lululemon Marks.  As a result of Defendants' activities, there is a high likelihood of confusion between the Counterfeit Products sold by Defendants on the one hand, and lululemon genuine products on the other hand.

27. Not only are consumers _likely_ to be confused by Defendants' use of the lululemon Marks, but consumers have _actually_ been confused.  Even without the benefit yet of discovery, lululemon has found evidence of actual consumer confusion and brand/reputational harm to lululemon from consumers who have recently complained about the products sold by Defendants.

28. lululemon identified social media posts indicating consumers actually believed they purchased authentic "lululemon" pants at dd's DISCOUNTS, including for example:

- dd's DISCOUNT customer @lezlies_closet wrote: "I bought defective LuLuLemon leggings at DD's Discount 😭."  In the video posted to Instagram @lezlies_closet states "They are originals. Definitely."



29. In addition, the quality of the counterfeiting was so bad, that lululemon identified additional social media posts indicating some consumers recognized that that pants offered for sale by dd's DISCOUNTS were fakes, including for example:

- Instagram user @thriftnfind_ wrote: "Wow DD Discount you are selling fake Lululemon. There was multiple fake Lululemon with the cheapest fabric and nothing even remotely similar to a real Lululemon. One even had the China sticker with writing...."



30. The harm to lululemon's brand and goodwill caused by Defendants' conduct is ongoing, as the negative reviews continue to mount, and confirm the confusion and disappointment caused to consumers due to the inferior quality of the counterfeit "lululemon" branded goods sold by Defendants.

31. Accordingly, Defendants' use of the lululemon Marks is not only likely to cause consumer confusion, it has caused actual confusion or mistake, and deceived consumers into believing there is an affiliation, connection, or association between lululemon and Defendants, and has confused members of the public as to the origin, sponsorship, authorization, and/or approval by lululemon of Defendants' "lululemon" branded product sales.  lululemon expects discovery to reveal further evidence of such actual confusion.  In addition to monetary damages to Plaintiff, Defendants' unlawful actions have caused irreparable harm to Plaintiff's brand and reputation, as to which there is no adequate remedy at law.

# FIRST CAUSE OF ACTION
## Federal Trademark Infringement
## 15 U.S.C. § 1114(1)(a)
## Against All Defendants

32. lululemon incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

33. lululemon owns established trademark rights in the lululemon Marks, which are federally registered in the United States. The registrations for the lululemon Marks are valid and subsisting and Registration Nos. 2607811, 2460180, and 4391115 are incontestable.

34. The lululemon Marks are distinctive and/or have acquired distinctiveness, and serve as source-identifiers for lululemon's premium athletic apparel among consumers.

35. Defendants knew or had reason to know of the lululemon Marks and lululemon's rights to the exclusive use of the same.

36. Nevertheless, Defendants used, and are continuing to use, marks that are identical or confusingly similar to the lululemon Marks in connection with the sale, offering for sale, distribution, or advertising of athletic apparel in interstate commerce in a manner that has, and is likely to continue to, cause confusion, mistake, or to deceive, and to diminish the value of the lululemon brand.

37. Defendants are not, and have never been, authorized by lululemon to use the lululemon Marks on or in connection with any goods.

38. Defendants' actions have caused, and are likely to continue to cause confusion, mistake, and deception as to the origin, source, sponsorship, approval, and/or affiliation of Defendants' products with lululemon's products.

39. Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith, constituting exceptional circumstances under the Lanham Act.

40. Defendants' unauthorized use of the lululemon Marks constitutes willful trademark infringement of the lululemon Marks in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), damaging lululemon in an amount to be proven at trial.

41. Defendants' infringing conduct has directly and proximately caused substantial, irreparable injury to lululemon and to the business and goodwill represented by the lululemon Marks, and unless enjoined will continue to do so, leaving lululemon without an adequate remedy at law.

**SECOND CAUSE OF ACTION**
**Federal Trademark Counterfeiting**
**15 U.S.C. § 1114(1)(b)**
**Against All Defendants**

42. lululemon incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

43. Defendants have publicly advertised, sold, offered to sell, and distributed counterfeit lululemon products in interstate commerce in direct competition with lululemon and without authorization or consent to use the lululemon Marks.

44. Defendants' products reproduce, counterfeit, copy, and colorably imitate the lululemon Marks or display a spurious designation that is identical with, or substantially indistinguishable from, the lululemon Marks.  Defendants' reproductions, counterfeits, copies, and colorable imitations of the Luluelon Marks are applied to labels used in connection with the sale or offering for sale of Defendants' products and have caused and will continue to cause consumer confusion, mistake, or deception.

45. Upon information and belief, Defendants knew or had reason to know of the lululemon Marks and lululemon's rights to the exclusive use of the same and their actions were conducted intentionally with complete disregard to lululemon's rights.  Accordingly, Defendants' actions constitute willful counterfeiting of the lululemon Marks in violation of the Lanham Act, 15 U.S.C. § 1114(1)(b), entitling lululemon to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

46. Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith, constituting exceptional circumstances under the Lanham Act.

47. Defendants' conduct has directly and proximately caused lululemon to suffer damage to the valuable lululemon Marks, and other damages in an amount to be proved at trial.

48. Defendants' conduct has caused substantial and irreparable injury to lululemon and to the business and goodwill represented by the lululemon Marks, thereby leaving lululemon without an adequate remedy at law.

**THIRD CAUSE OF ACTION**
**Federal Unfair Competition**
**15 U.S.C. § 1125(a)**
**Against All Defendants**

49. lululemon incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

50. Defendants offer for sale and sell infringing products that are designed to appear to be authentic lululemon products, using the lululemon Marks. Defendants' unauthorized use of the lululemon Marks is likely to cause confusion, deceive, and mislead the consuming public into believing that there is some affiliation, connection, or association between Defendants and lululemon and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or affiliation of Defendants' products.

51. Defendants' actions, including the unauthorized use of the lululemon Marks in commerce, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which have caused confusion, mistake, and deception, as to Defendants' products association or affiliation with lululemon, or lack thereof, as well as to the origin, source, and sponsorship of Defendants' products, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

52. Defendants' conduct has directly and proximately caused lululemon to suffer damage to the valuable lululemon Marks, and other damages in an amount to be proved at trial.

53. Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith, constituting exceptional circumstances under the Lanham Act.

54. Defendants' actions described above, including its unauthorized and misleading use of the lululemon Marks in commerce have caused substantial and irreparable injury to lululemon and to the business and goodwill represented by the lululemon Marks, thereby leaving lululemon without an adequate remedy at law.

## FOURTH CAUSE OF ACTION
### California Unfair Competition
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

55. lululemon incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

56. Defendants have knowingly, willfully, and unlawfully infringed the lululemon Marks, misleading consumers and relying on counterfeit marks and false designations to pass off their goods as authentic lululemon products.

57. Defendants' practices constitute unlawful, unfair, and fraudulent business acts under California Business & Professions Code §§ 17200 *et seq.*

58. As a direct and proximate result of Defendants' acts, lululemon has suffered damages and will continue to suffer irreparable harm, leaving lululemon without an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, lululemon respectfully prays for the following relief:

A. For entry of judgment in favor of lululemon and against Defendants on each of lululemons's claims for relief alleged in this Complaint;

B. For an order that Defendants, their agents, servants, employees, and any related persons or entities acting in concert with them, be preliminarily and permanently enjoined and restrained from unlawfully using and/or counterfeiting the lululemon Marks, or any marks confusingly similar to the lululemon Marks;

C. For an order requiring Defendants to deliver for destruction any and all products in Defendants' possession that infringe on the lululemon Marks;

D. For a determination that Defendants' acts of trademark infringement and counterfeiting constitute cases of willful and exceptional infringement;

E. For actual damages as a result of Defendants' unlawful conduct, alleged above, as well as any profits that are attributable to the alleged conduct and are not taken into account in computing lululemon's actual damages;

**1**      F.      For maximum statutory damages available under the law to the extent lululemon **2** elects statutory damages for any claim for relief;

**3**      G.      For reasonable attorneys' fees to the fullest extent available under the law;

**4**      H.      For treble, exemplary, and/or enhanced damages to the fullest extent available **5** under the law;

**6**      I.      For prejudgment interest and the costs of prosecuting these claims to the fullest **7** extent available under the law;

**8**      J.      For any additional injunctive, specific performance, and/or other provisional **9** remedies, as appropriate; and,

**10**      K.      For such other and further relief as the Court deems just and proper.

DATED: June 20, 2019              SIDEMAN & BANCROFT LLP

By:      /s/ Zachary J. Alinder
         Zachary J. Alinder
         Attorneys for Plaintiff
         LULULEMON ATHLETICA CANADA INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Plaintiff lululemon demands a trial by jury on all issues so triable.

DATED: June 20, 2019                    SIDEMAN & BANCROFT LLP


By:      /s/ Zachary J. Alinder
         Zachary J. Alinder
         Attorneys for Plaintiff
         LULULEMON ATHLETICA CANADA INC.